## CLEVELAND TRUST CO. v. BERRY et al.
## No. 7320.

Circuit Court of Appeals, Sixth Circuit.
Oct. 12, 1938.

---

[9] Ante, note 5.      [10] Ante, note 6.

F. O. Richey, of Cleveland, Ohio (F. O. Richey, H. F. McNenny, and Richey & Watts, all of Cleveland, Ohio, on the brief), for appellant.

G. B. Schley, of Indianapolis, Ind. (Carlos J. Jolly, Bruce G. Booth, and Ralph N. Flint, all of Detroit, Mich., Geo. B. Schley and Verne A. Trask, both of Indianapolis, Ind., and Melville Church, of Washington, D. C., on the brief), for appellees.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a decree dismissing appellant's bill instituted under Title 35, § 63, U.S.C., 35 U.S.C.A. § 63,[1] praying that appellant be adjudged entitled to a patent. Appellant is assignee of the application of Frank Jardine, filed July 31, 1925, for a patent on a piston used in an internal combustion engine. The application was thrown into interference with several others, of which only those of Adolph Nelson and appellee Berry need be mentioned here. In the interferences out of which this action grows the Patent Office determined that the various parties claimed substantially the same patentable invention.[2] Nelson filed an appeal in the United States Court of Customs and Patent Appeals and was defeated, the tribunals of the Patent Office being affirmed in determining Berry's priority. Nelson v. Berry, Cust. & Pat. App., 59 F.2d 351. After the interferences were terminated, the Patent Office issued a patent to Berry, and appellee the General Motors Corporation is licensee under this patent. The two counts upon which appellant contends that it is entitled to a patent are the following:

Count of Interference No. 53856.

"In a piston, a head, a separate sectional skirt of aluminum alloy, and steel struts extending transversely of the piston pin bearings uniting the sections to each other and to the head, said struts having their opposite ends buried in the respective skirt sections substantially as set forth."

Count of Interference No. 55250.

"A piston having a head, piers depending from the head, piston pin bearings formed in the piers, cylinder-bearing portions on opposite sides of the piston, a pair of chordal struts, each of said struts extending between the cylinder-bearing portions, the intermediate portion of each strut being surrounded by the material of a pier, there being an integral connection between each of the cylinder-bearing portions and each pier."

The invention involved in the various interferences relates to a piston of aluminum alloy and the attempt to control its expansion within the cylinder. The cylinders in an internal combustion engine are usually made of iron, and the piston was originally made of the same metal. Iron, however, is heavy, and also is a poor conductor of heat. Aluminum is lighter than iron, and has 2.85 times greater conductivity than iron, and therefore it began to replace iron in pistons.[3] It soon developed, however, that aluminum also has its drawbacks. The top of the piston, called the head, is subject to high temperature, due to the rapidity of the explosions in the cylinder. If the piston is of aluminum this high temperature causes it to expand to such a degree that it requires excessive clearance, which in turn causes various operative disadvantages. Aluminum has a higher coefficient of expansion than iron or steel. If the

---

[1] Title 35, § 63, U.S.C., 35 U.S.C.A. § 63: "Whenever a patent on application is refused by the Commissioner of Patents, the applicant, unless appeal has been taken from the decision of the board of appeals to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication and otherwise complying with the requirements of law. In all cases where there is no opposing party a copy of the bill shall be served on the commissioner * * *."

[2] Rules of Practice, U. S. Patent Office.

"93. An interference is a proceeding instituted for the purpose of determining the question of priority of invention between two or more parties claiming substantially the same patentable invention and may be instituted as soon as it is determined that common patentable subject matter is claimed in a plurality of applications or in an application and a patent. * * *"

[3] A full discussion of pistons and their operation is found in Cleveland Trust Co. v. Schriber-Schroth Co., 6 Cir., 92 F.2d 330.

piston is of the same material as the cylinder the rate of expansion will be constant under varying temperature conditions and the clearance will be approximately the same. But if the piston is of aluminum and the cylinder is of iron, the parts do not expand or contract in equal degree. In such a cylinder a clearance which is adequate when the parts are cold will be insufficient when the parts become heated and expand. This is particularly true of the guide portion, or skirt, of the piston, which has no grooves for expansible rings, and must fit the cylinder with peculiar accuracy at all times. Looseness of the piston in the cylinder causes so-called "piston slap," while an overtight fit causes "freezing," and may destroy the piston.

Briefly stated, the problem was to retain the advantages of aluminum and at the same time control its expansion so as to avoid variations in clearance. The pistons of Nelson, Berry and Jardine accomplish this result in a piston of aluminum or aluminum alloy, by the use of steel struts or braces in the piston skirt, arranged transversely of the piston pin bosses with their end portions embedded in the piston trust-receiving sections of the skirt. The lower coefficient of expansion of the strut material compensates for the higher coefficient of expansion of the aluminum, and improved clearance results.

The bill alleges that in the interference proceedings Jardine contended that the counts were unpatentable as to Berry and Nelson because of anticipation and want of patentable novelty; that the examiner suggested a want of proof on these questions; that this proof was later supplied, but was never considered by the examiner, who ruled against Jardine; that the examiner of interferences ruled that he had no authority to decide the question of patentability, and that the board of appeals also failed to pass upon this question and awarded priority to Berry. The bill alleges that the counts of the interferences are unpatentable to Berry and are so limited by the prior art that if made by Berry the counts are invalid. The District Court, after hearing on the merits, dismissed the bill.

Two preliminary questions are presented, the first of which relates to Title 35, § 63, U.S.C., 35 U.S.C.A. § 63, which appellees claim is unconstitutional and void so that this court has no jurisdiction. The same contention was previously made by motion to dismiss, which the District Court denied. It was urged that § 63 undertakes to invest a constitutional court with jurisdiction of a proceeding which is neither a case nor controversy within the meaning of Article 3, Sections 1 and 2, of the Constitution of the United States, U.S.C.A.Const. art. 3, §§ 1, 2, and that the decree, if in favor of the appellant, would be merely advisory. Appellees claim that there is no judicial case or controversy because there are no adverse parties, and because the question involved relates to the exercise of the administrative functions of the Patent Office. They urge that the adjudication contemplated will be advisory only because it simply authorizes, but does not command, the issuance of the patent. But adverse parties are here contesting the case. The Commissioner of Patents is a proper party. A copy of the bill must be served on him, if there is no adverse party (Title 35, § 63, U.S.C., 35 U.S.C.A. § 63), and he might have intervened or been joined in this action. Within the definition given in Tutun v. United States, 270 U.S. 568, 576, 46 S.Ct. 425, 426, 70 L.Ed. 738, "Whether a proceeding which results in a grant is a judicial one does not depend upon the nature of the thing granted, but upon the nature of the proceeding which Congress has provided for securing the grant," this suit is plainly judicial. That the precise method of enforcement of the decree is not determinative was pointed out in Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000. While that case construes the federal declaratory judgment act, Jud.Code § 274d, 28 U.S.C.A. § 400, it carefully defines the meaning of the term "controversy," as used in the constitutional sense, as follows [page 464]:

"Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages."

As to the nature of the proceeding, in detail, appellant's claim arises under the federal statutes, and is presented in judicial form by bill in equity. Every right of a litigant in an equity proceeding is preserved to the complainant under § 63.

After the contentions have been fully submitted to a court, a decree is entered which has judicial force and immediately and definitely determines the rights of the parties. It becomes the decision of the Patent Office, and is to govern the action of the Commissioner. Gandy v. Marble, 122 U. S. 432, 440, 7 S.Ct. 1290, 30 L.Ed. 1223. The District Court was correct in its ruling on the motion to dismiss. The statute is constitutional and the court has jurisdiction.

■■ Appellees' second contention is that appellant has no standing in this court because it failed to file with the Commissioner of Patents the notice described in Title 35, § 59a, U.S.C., 35 U.S.C.A. § 59a, which reads as follows:

"If any applicant is dissatisfied with the decision of the board of appeals, he may appeal to the United States Court of Customs and Patent Appeals, in which case he waives his right to proceed under section 63 of this title. If any party to an interference is dissatisfied with the decision of the board of appeals, he may appeal to the United States Court of Customs and Patent Appeals, provided that such appeal shall be dismissed if any adverse party to such interference shall, within twenty days after the appellant shall have filed notice of appeal according to section 60 of this title, file notice with the Commissioner of Patents that he elects to have all further proceedings conducted as provided in section 63. * * *"

Subsequent to the filing of this bill an appeal from the same interference decision was taken by Nelson to the Court of Customs and Patent Appeals. It is argued with some reason that the purpose of the enactment of § 59a and § 63, which changed the procedure theretofore existing, was to prevent the successful party in a patent interference from being vexed by two simultaneous appeals, and that in this case there were two such appeals, that of Nelson and this of appellant. But appellant filed its bill before Nelson instituted his appeal, and could not be deprived of its right to file a bill in equity except by its own election to appeal to the Court of Customs and Patent Appeals. The jurisdiction of the District Court had attached before Nelson's appeal was filed. Cf. Nelson v. Berry, supra, at page 353. Moreover, the wording of the statutes does not support the contention that because notice was not filed under § 63, appellant has no standing here. While § 59a states that the appeal to the Court of Customs and Patent Appeals will be dismissed if notice of election to file under § 63 is filed, it does not provide that the District Court will lose jurisdiction which has theretofore attached, unless such notice is filed. Section 63 provides that the District Court does not acquire jurisdiction in a case where an appeal is pending or decision has been made in the Court of Customs and Patent Appeals, but does not provide that the District Court, which has acquired jurisdiction of a bill under § 63 before appeal to the Court of Customs and Patent Appeals, loses it after such an appeal is brought. The appellant was not required to file notice of election, having instituted his action prior to Nelson's appeal.

■ Appellant's principal attack is directed at the validity of the Berry patent. But neither that question nor the alleged inoperative character of the Berry device is involved in this proceeding. Christie v. Seybold, 6 Cir., 55 F. 69. The question is whether Jardine is entitled, according to law, to receive a patent for his invention as specified in his claim, or for any part thereof. Title 35, § 63, U.S.C., 35 U.S.C.A. § 63; Gandy v. Marble, supra, at page 440, 7 S.Ct. 1290. If Berry's patent is invalid, that fact does not entitle Jardine or his assignee to a patent. Patentability of Jardine would necessarily be an issue in this case under circumstances such as those disclosed in Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502. If this court should hold that the ruling of the patent tribunals on priority was incorrect and that Jardine was the first to conceive and to have acted with due diligence in reducing to practice the invention set forth in the counts in issue, then the question of patentability would be presented. Jardine still would not be entitled to a patent if these claims disclose no patentable novelty. Hansen v. Slick, D.C., 216 F. 164, affirmed 3 Cir., 230 F. 627; Hill v. Wooster, supra; Root Spring Scraper Co. v. Willett Mfg. Co., 6 Cir., 84 F.2d 42. But neither Willett Mfg. Co. v. Root Spring Scraper Co., 6 Cir., 55 F.2d 858, nor any case relied on declares that patentability must be determined in an action under this section where the claimed priority is not established. Hill v. Wooster, supra, and Root Spring Scraper Co. v. Willett Mfg. Co., supra, specifically hold that when the one seeking the decree under § 63 prevails in

the trial court upon the question of priority, the patentability of his claims must be decided. But here Jardine has not prevailed as to priority.

Hill v. Wooster does not justify our broadening the issues so as to make the suit under § 63 the practical equivalent of an infringement suit in which all the defenses known to the patent law may be brought forward. Certainly the court should have the benefit of informative expert evidence and a full disclosure of all the pertinent facts before it can properly determine the scope of patent claims, as in an infringement action. Cf. Melling v. Gordon Form Lathe Co., 14 F.2d 437, D.C.

The issues are (1) whether Jardine discloses an invention substantially the same as Berry, and if so, (2) which is prior.

■■■■ Appellant contends that in an action under § 63 the claim should be given a narrow construction so as to avoid the prior art, and that if so construed, the counts do not read upon Berry, and that reversal is required. We think that it is not necessary to consider this question nor to discuss General Electric Co. v. Steinberger, D.C., 208 F. 699, affirmed 2 Cir., 214 F. 781, and other cases cited by appellant, for the reason that whether a broad or a limited rule of claimed construction is adopted, the invention covered by these counts is common to Berry and Jardine.

The field was crowded. Appellant, in support of its claim that Berry is void for anticipation, cites no less than eighteen patents. The principle of control of thermal expansion of the aluminum piston by use of a ferrous ring was shown in Napier, No. 1,525,316, issued February 3, 1925. The Nelson patent, No. 1,454,762, issued May 8, 1923, shows a brace in the piston skirt. While in proceedings under § 63 the court exercises its independent judgment (General Electric Co. v. Steinberger, supra), the ruling of the patent tribunals that the invention is common to Berry and Jardine, which was the basis of the interference proceedings and was adhered to on Jardine's motion to dissolve the interference, is persuasive, and particularly so as no new evidence upon this point is adduced. Jardine claims that his circumferential skirt is not the same as the skirt segments of Berry; but this difference is immaterial. The circumferential skirt and the skirt segments perform the same function. Each is the elongation of the piston and serves to guide it in its reciprocations in the cylinder. Jardine asserts that Berry does not have steel struts uniting the sections. But the specifications and drawings show the contrary. The second count also reads on Berry, whose specifications and drawings disclose chordal struts as Jardine, the cylinder-bearing portions being functional and operatively integral with the piers. The intermediate portion of the strut is shown in figure 4 of the Berry drawings to be surrounded by the material of the pier. We conclude that the counts describe an invention common to both Berry and Jardine.

As to priority, every tribunal of the Patent Office and the District Court has held against Jardine. The question is one of fact which has been settled by the special tribunal with power to decide that question. The decision of the Patent Office, therefore, must be accepted as controlling unless the contrary is established by testimony which in character and amount carries thorough conviction. Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657. It suffices to say that there is no testimony in this record establishing that Jardine is prior to Berry.

Certain additional testimony was presented in this suit beyond that adduced before the Patent Office in the interference proceedings. Stephen D. Hartog and others testified as to an alleged public use by Hartog of a similar device previous to the conception of the idea by Berry. While this testimony was not before the examiner, it was considered by the Patent Office on petition for institution of public use proceedings, which was denied on the ground that the earliest date of the alleged public use was less than two years prior to the Berry application. The ruling of the Patent Office is sustained by the record, and as the validity of the Berry patent is not in issue (Christie v. Seybold, supra), this additional testimony need not be detailed. It in no way affects the result.

The decree is affirmed.