**SMITH v. PRUTTON et al.**

No. 8949.

Circuit Court of Appeals, Sixth Circuit.,
April 7, 1942.

Max D. Farmer, of Buffalo, N. Y. (Charles W. Parker, and Howard D. Dugan, both of Buffalo, N. Y., and John B. Hull, of Cleveland, Ohio, on the brief), for appellant.

Oscar C. Limbach, of Cleveland, Ohio (Oberlin, Limbach & Day, and Jno. F. Oberlin, all of Cleveland, Ohio, on the brief), for appellees.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant being the unsuccessful party to a patent interference proceeding in the Patent Office, filed his bill in equity in the District Court under § 4915, R.S., 35 U.S.C.A. § 63, praying to be adjudged entitled to the count in issue. This he did under compulsion of a notice filed by the appellees with the Commissioner of Patents under 35 U.S.C.A., § 59a, that they elected to have all further proceedings conducted

as provided in § 63. The controversy was submitted on the Patent Office record supplemented by stipulated facts, and the District Court entered a decree authorizing the Commissioner of Patents to issue the patent to the defendant, the Lubri-Zol Corporation, as assignee of record of the defendant Prutton, and dismissed the bill.

Smith was the senior party to the interference proceedings, having filed his application November 22, 1932. Prutton's filing date was December 4, 1934. The applications were brought into interference along with applications of other junior parties. The latter were dissolved by the Examiner of Interferences, and as to them there was no appeal. Priority of invention of the subject matter in issue was awarded by the Examiner to Smith, and upon Prutton's appeal to the Board of Appeals the decision of the Examiner was reversed, priority awarded to Prutton, and upon reconsideration at the instance of Smith, decision was permitted to stand.

The subject matter of the interference is embraced in a single count, which is here set forth:

"A lubricant compound of high film strength and lower coefficient of friction, over a significant range of working conditions, than any one of its constituents or any two of its constituents combined, comprising a major proportion of mineral lubricating oil, a minor proportion of a substantially neutral, body of oil-firm strengthening, oil-soluble, aromatic hydro-carbon having chlorine in chemical combination therewith of the type illustrated by chlornaphthalene and chlor-diphenyl, said body substantially non-volatile at ordinary temperatures, and a minor proportion of another body of friction-reducing, oil-soluble organic compound having oxygen in saponifiable chemical combination therewith, the total proportion of said bodies being within the limit of their combined solubility in said lubricating oil."

It will be observed that the count relates to a lubricant compound comprising a mineral lubricating oil and two added agents, and that it requires the mineral lubricating oil to be the major ingredient and the other constituents to be present within the limits of their combined solubility in the lubricating oil. A composition of this type is said to have the character of high film strength and a lower coefficient of friction over a significant range of working conditions

than any one of its constituents or any two of its constituents combined. These characteristics appear in the introductory clause of the claim and were held by the Examiner to be a material limitation on the count with respect to which Prutton had failed to show either conception or a reduction to practice prior to Smith's critical date. With this conclusion the Board of Appeals disagreed. The Examiner held that Smith was entitled to no earlier date either for conception or reduction to practice, than October 14, 1932. This holding is not challenged. There was evidence, however, credited by the Board of Appeals, that certain lubricant compositions prepared on Prutton's behalf by one Johnson on September 1, 1932, satisfied the composition requirement of the count in issue, and that compositions having the same, or substantially the same constituents, were produced in commercial quantities for sale on October 19, 1932. The Board held that the testimony with respect to the tests of the compositions produced on September 1, while not as full and complete as might be desired, yet when taken with the evidence of production shortly thereafter in large quantities for commercial use, was persuasive of a satisfactory reduction to practice at the earlier date.

█ The District Court followed the Board's decision, and this is urged upon us as error requiring reversal on the ground that where there are two or more conflicting decisions upon priority in the tribunals of the Patent Office in an interference case, it is the duty of the court to exercise its independent judgment as to the weight of evidence upon that issue, and this the court failed to do. Undoubtedly there are decisions in the Court of Customs and Patent Appeals, such as that in Kreidel v. Parker, 97 F.2d 171, 179, which seem to indicate that where patent tribunals do not agree upon the point of priority it is the duty of the court to draw its own conclusions without recognizing any presumption of correctness in the final adjudication. We are told, however, by controlling authority, Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657, that a proceeding under § 4915 "is something more than a mere appeal. It is an application to the court to set aside the action of one of the executive departments of the government"; also that "it is something in the nature of a suit to set aside a judg-

ment, and, as such, is not to be sustained by a mere preponderance of the evidence. Butler v. Shaw, [C.C.], 21 F. 321, 327. It is a controversy between two individuals over a question of fact which has once been settled by a special tribunal, intrusted with full power in the premises." So the conclusion is reached that "upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

Our attention is called by the appellant to the excellent discussion of the rule of Morgan v. Daniels, supra, by Judge Evans of the Seventh Circuit, in Uihlein v. General Electric Co., 47 F.2d 997, but the conclusion there reached was that while a District Court is not bound by departmental decisions even though the testimony before it is identical, nevertheless its decision adverse to that of Court of Appeals of the District of Columbia under the rule announced in Morgan v. Daniels must be reversed because the quantum of proof was not sufficient to overcome the weight of the findings of that court on the issue supported as it was by the conclusion of three other fact-finding tribunals. Illuminating, particularly, is his opinion upon the petition for rehearing with its reference to the case of Gold v. Newton, 2 Cir., 254 F. 824, wherein, notwithstanding the view of the majority of the court that the plaintiff there was right, the three judges were unanimous in holding that the decision in Morgan v. Daniels, required, in the absence of substantially new and persuasive testimony not adduced before the other tribunals, that the court follow their decisions. This is not to say, of course, that Patent Office decisions are conclusive upon the District Court or upon us. The statute, as observed by Judge Evans, gives the litigants permission to present the case anew to the District Court after it has been finally closed in the Patent Office, and imposes upon the District Judge the obligation of hearing the evidence and determining the issue in the light of the rule laid down by the Supreme Court. While he is not foreclosed by de-

cisions of the Patent Office tribunals, they should be followed unless the evidence clearly persuades or "carries thorough conviction" that they are erroneous. Cleveland Trust Co. v. Berry, 6 Cir., 99 F.2d 517, 522; Nichols v. Minnesota Mining & Mfg. Co., 4 Cir., 109 F.2d 162.

We are not persuaded that in giving weight to the final decision in the Patent Office, the District Court surrendered its own judgment to that of the administrative tribunal, or went beyond the requirements of Morgan v. Daniels. It said [36 F.Supp. 659], "The Patent Office tribunals fully discussed the points made here, and their opinions and decisions have been carefully examined, since their findings are, and rightly should be, accorded persuasive weight unless this Court be convinced that they are plainly and unmistakably erroneous." But even if the court leaned too heavily upon the latest decision in the Patent Office, this of itself is no ground for reversal. The case is before us upon the entire record and the court may have been right in result even if wrong in method. It is idle, we think, to balance the decision of the Board of Appeals with that of the Examiner, to the end that there is no persuasiveness in final Patent Office decision. The determination of the Board is controlling upon the Commissioner in the absence of further appeal. It is the decision of the Patent Office, as an administrative arm of the government, that we are asked to set aside. Whatever persuasiveness attaches to its decision attaches to the final adjudication, however difficult the road by which it has been reached. The right to review within the department itself is one created by statute (35 U.S.C.A. § 7), and while persuasiveness may gain by unanimity within the Patent Office, it may not be said that none resides in final decision.

It is, therefore, our view that in examining the present record our duty is not to determine whether the evidence on the question of priority preponderates in favor of Smith or Prutton, but whether it carries to our mind a thorough conviction that the department was wrong, or that the court below was in error in following its decision. The count in interference, if valid, and this we think we are not obliged as in Willett Mfg. Co. v. Root Spring Scraper Co., 6 Cir., 55 F.2d 858, to decide, discloses, in the light of the prior art con-

sidered by the Examiner, but a narrow advance. The Board of Appeals, in an earlier decision on Prutton's motion to add counts covering a mixture of a suitable oil base, with a chlorinated organic compound and a fatty acid or oil, concluded that prior art references clearly teach that oils may be improved with respect to certain characteristics by the addition of the chlorinated organic compound, and that they may be improved with respect to other characteristics by the addition of saponifiable oils and fats, also by fatty acids or other organic acids in comparatively small amounts, and that it was obvious to add materials of both types to a lubricating oil base. These conclusions are not challenged by either party. The validity of the count in interference, to justify the issue of a patent, is said to lie in the discovery by the inventor of a new characteristic in an otherwise obvious combination, whereby a lubricant of the type described in the count will produce a new result and be capable of a new use. It is this conception of a hitherto undiscovered characteristic in an old or an obvious combination, that is said to constitute invention and give patentability to the claim applied for. The principle is best illustrated by the case of General Electric Co. v. Hoskins Mfg. Co., 7 Cir., 224 F. 464, wherein a patent was held valid for an alloy which was old, on the ground that the inventor had discovered that when used as an electric resistance element it was far superior to any previously known, except platinum, a discovery which opened up new uses for the old alloy with the result of greatly advancing the art.

In the present case it is said that the count in interference discloses invention because of the newly discovered characteristics recited in its first four lines. These characteristics are the high film strength of the compound, and that it achieves a lower coefficient of friction over a significant range of conditions than any of its constituents or any two of its constituents combined.

The appellant's case amounts to this: He says that as the result of certain experiments conducted by him in October, 1932, he discovered both of the hitherto unknown characteristics; that he immediately thereafter made a test of the compound under operating conditions in the crankshaft of an automobile, and finding the test satisfactory began commercial production of the composition; that Prutton had no conception of these characteristics when he made his composition at an earlier date, since his application makes no reference to the lower coefficient of friction, and while a test made after the hearing before the Examiner had begun, discloses such characteristic, Prutton may have no advantage thereby, for his willingness to submit his compound to the test is not persuasive of previous knowledge of its characteristics since he had been given access to Smith's earlier application which disclosed to him that the combination would have the characteristics recited in the count. In any event, it is urged, Prutton never reduced his composition to practice prior to Smith, and so is entitled to no earlier date for reduction to practice than that of his application. Besides, the tests made by Prutton on September 1 are not corroborated by records, and the manufacture of large batches of the composition for commercial purposes neither constitutes direct proof, nor satisfactory circumstantial evidence of reduction to practice in the absence of proof, that any of the lubricant was actually used under operating conditions.

There is evidence, however, that Prutton's compositions 163 and 163A, were made and tested on September 1, 1932, by Johnson; that Johnson's tests were under the direction of Prutton who explained to him that extreme pressure agents would increase the film strength of a lubricant without appreciably reducing the coefficient of friction, and that the oiliness agents would reduce the coefficient of friction without appreciably decreasing film strength. Prutton, therefore, wanted to try a combination of the two compounds to ascertain whether he could get higher film strength with lower coefficient of friction. Johnson followed these instructions, prepared and tested a number of lubricating compositions, and commercialization followed. Prutton recognized the high film strength of his compositions 163 and 163A, and it is that property which brought about the manufacture by the appellee, the Lubri-Zol Corporation, of the large quantities for sale. Whether Prutton recognized the other advantageous characteristic recited in the count, that is, the lower coefficient of friction, is not disclosed by the record although the Examiner of Interferences conceded that the com-

positions actually had both characteristics as the tests during the hearing demonstrated.

 It seems to us clear, from the record, that Prutton discovered and recognized one of the desirable properties of the claimed composition, that is, its high film strength, and that this recognition resulted in its commercialization. That he failed to recognize or claim in his application all of the desirable properties of his invention, is unimportant since there is no obligation upon the inventor to catalog all of the functions, properties, or uses of his invention. Jackson Fence Co. v. Peerless Wire Fence Co., 6 Cir., 228 F. 691; Swan v. Thompson, Cust. & Pat.App., 80 F.2d 374; In re Gauerke, Cust. & Pat.App., 86 F.2d 330, 331. As was said in the first of the references, there is no obligation upon the patentee "to convert his specification into a trade circular." [228 F. 696.] Of course, a prior accidental and unappreciated combining which would not amount to anticipation, Cleveland Trust Co. v. Schriber-Schroth Co., 6 Cir., 108 F.2d 109, would not entitle a party to an adjudication of priority, but Prutton's discovery, such as it was, was no accident. His instructions to Johnson were specific. He sought definite and precise results. In part, at least, he recognized that they had been achieved.

 It may be conceded that Prutton did not immediately recognize all of the meritorious qualities of the claimed composition as did Smith. The question then arises whether Smith would have been entitled to a patent notwithstanding Prutton, had Prutton been earlier, on the ground that he had discovered another unsuspected quality in the claimed compound. This must be answered in the negative, for the lower coefficient of friction does not, at least upon this record, open up a new and distinct use for the product and so advance the art. The subject matter of the count is a lubricant, and it is not claimed, as we understand it, that Smith's discovery of added quality permits its use in other fields, and the principle applied in General Electric Co. v. Hoskins, supra, is limited to that. Moreover, Prutton mentioned other properties not mentioned by Smith, and it may be assumed that the composition possesses properties not mentioned by either party, and it may also be assumed, even without profound scientific knowledge up-on the subject, that from the very nature of the art investigators are continually in search of higher film strength and a lower coefficient of friction.

But the contention is also that Prutton did not reduce his invention to practice. This is nearly always a debatable point when priority is the issue. Concededly, the Court of Customs and Patent Appeals has required clear proof and corroboration before it will accept an inventor's testimony of reduction to practice, when the date claimed is substantially earlier than the date of his application, though conceding that laboratory tests may constitute reduction to practice under some circumstances. Chittick v. Lyons, Cust. & Pat. App., 104 F.2d 818. We have here, however, not only evidence of the inventor as to the September tests, but definite corroboration, together with record evidence that large quantities of Prutton's compound were immediately thereafter manufactured for commercial sale. In Chittick v. Lyons, experimentation was still in progress, while here experimentation had ended and commercialization had begun. It may not be said, therefore, that the conclusion of the Board of Appeals rests solely upon circumstantial evidence, though circumstantial evidence corroborates and supports verbal evidence and there are written records of commercial manufacture which warrant an inference that Prutton preceded Smith. At the very least we are unable to say that the issue is free of doubt and so, that the conclusion reached by the Board of Appeals is clearly wrong.

 It may be conceded that manufacturers sometimes fabricate products for commercial use, upon an assumption that virtues reside therein which have not been clearly demonstrated. But that is not normal and expected business practice in an industrial era when error proves to be so highly expensive as in this. It has been said, Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 383, 48 S.Ct. 380, 387, 72 L.Ed. 610, "A process is reduced to practice when it is successfully performed. A machine is reduced to practice when it is assembled, adjusted and used. A manufacture is reduced to practice when it is completely manufactured. A composition of matter is reduced to practice when it is completely composed." Without pressing this generalization too far, we think this record discloses reduc-

tion to practice by Prutton, if not too clearly, at least clearly enough to preclude our reaching a conviction that the Board was mistaken in sustaining his claim. So viewing the evidence we hold the court was not in error in awarding him priority.

The decree below is affirmed.