## MISHAWAKA RUBBER & WOOLEN MFG. CO. v. PAINE & WILLIAMS CO.

### No. 9494.

Circuit Court of Appeals, Sixth Circuit.

Dec. 6, 1943.

Herbert L. Shepard, of Chicago, Ill. (Eugene M. Giles and Herbert L. Shepard, both of Chicago, Ill., and William E. Chilton, of Cleveland, Ohio, on the brief), for appellant.

William R. Day and John F. Oberlin, both of Cleveland, Ohio (Oberlin, Limbach & Day, John F. Oberlin, and William R. Day, all of Cleveland, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The controversy presented here originated in the United States Patent Office. In interference proceedings there, the Examiner of Interferences was affirmed by the Patent Office Board of Appeals in his holding that Blair and Schott, assignors of appellant Mishawaka Rubber & Woolen Manufacturing Company, had established priority of invention with respect to nine article claims of their issued Patent No. 2,032,832. Both the Examiner and the Board held, however, that priority of invention had not been established by appellant's assignors with respect to the method of making these articles, claimed by them in a pending application.

On an interference count covering the method claim, the Patent Office awarded priority to Vrooman, assignor of appellee, The Paine & Williams Company. Vrooman, who had applied for a patent on the articles covered by the claims of the Blair and Schott Patent No. 2,032,832, and for a patent on the method of making these articles claimed as invented by him, was their antagonist in the interference proceedings. In the Patent Office, testimony relating to priority of invention had been adduced by each side upon the issues resolved.

The appellant filed against appellee in the District Court, under Section 4915 of the Revised Statutes of the United States, 35 U.S.C.A. § 63, a complaint, in which was sought reversal of the ruling of the Patent Office with respect to the method count of the interference, and an adjudication authorizing the Commissioner of Patents to issue to appellant a patent embodying the invention claimed in that count.

In rejoinder, the appellee denied the right of appellant to a patent on the method; asked reversal of the decision of the Patent Office with respect to the nine article claims; and prayed that the Commissioner of Patents be authorized to issue to appellee on the Vrooman application, a patent covering the article claims. Appellee also prayed that its assignor, Vrooman, be adjudged the original, first and sole inventor of the method, and entitled to receive letters patent therefor, to be issued to appellee, as assignee thereof.

The answer of appellee attacked the validity of the article claims of appellant's Blair and Schott Patent No. 2,032,832.

In reply, the appellant denied appellee's allegations; averred them to be irrelevant and immaterial to the issues involved in the action under Section 4915 of the Revised Statutes; and pleaded that the District Court lacked jurisdiction of the issues concerning the article counts. By way of counter-claim, the appellant in its reply charged appellee with infringing its patent; and prayed an injunction against such infringement, and an adjudication of the validity of its patent.

On motion of appellee, the District Court struck the infringement counter-claim of appellant; and the case proceeded to trial upon the remaining issues on oral testimony, depositions, exhibits and certain records of the Patent Office.

More than two weeks after the hearing, upon the conclusion of which the court had taken the case under advisement, the appellee, pursuant to Civil Procedure Rule 15, 28 U.S.C.A. following section 723c, filed a motion to amend its counter-claim by invoking jurisdiction under the Federal Declaratory Judgment Act, Section 274d of the Judicial Code, 28 U.S.C.A. § 400. This motion, over the objection of appellant, was sustained by the District Court, inasmuch as the question of patentability was deemed to have been put in issue by the complaint and the answer.

Upon the authority of Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502, the District Court held that patentability and not priority was the first issue to be

determined in the case. The court found no patentable novelty in the claims of the Blair and Schott Patent No. 2,032,832. The process of heating and molding rubber was found to have been an old practice, merely modified by the patentees to meet a new need. It was found further that the claims of Blair and Schott had been anticipated by Neefus Patent No. 112,168, issued February 28, 1871; Koehler Patent No. 1,536,223, issued May 5, 1925; and Punke Patent No. 1,820,324, issued August 25, 1931.

The District Court found, moreover, that the method claim, embraced in the consolidated interference, failed to define any patentable invention. The bill of complaint was accordingly dismissed, and all prayers of the answer and counter-claim, except for the dismissal of the complaint, were denied.

The appellant stresses the fact that the District Court gave no consideration to the issue of priority between the contesting parties, but predicated its decision solely upon the invalidity of the claims. It is urged that, in this respect, the course of the court was inconsistent with the practice followed in Cleveland Trust Co. v. Berry, 6 Cir., 99 F.2d 517, 521. On the record presented in Cleveland Trust Co. v. Berry, neither the validity of the Berry patent nor the alleged inoperative character of his device was found to be involved. Moreover, it was stated that invalidity of Berry's patent would not entitle Jardine, or his assignee, to a patent. The court expressly declared that "patentability of Jardine would necessarily be an issue in this case under circumstances such as those disclosed in Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502." The opinion asserted that should error be found in the ruling of the patent tribunals on the issue of priority and if Jardine were found to have been the first to conceive and reduce to practice the invention set forth in the counts in issue, the question of patentability would be then presented. It was not considered justifiable, in the state of the record, to broaden the issues in an action under Revised Statutes, Sec. 4915, U.S.C.A., Title 35, Sec. 63, to equivalence with an infringement suit in which all defenses known to the patent law might be brought forward. In the circumstances presented, the Court expressed need of informative, expert evidence and a full disclosure of all the pertinent facts before the scope of the patent claims could be properly determined, as in an infringement suit.

In this circuit the binding effect of the doctrine of Hill v. Wooster was expressly recognized in Christie v. Seybold, 6 Cir., 55 F. 69, 72, in which Judge Taft pointed out that, under that authority in a suit under Section 4915 of the Revised Statutes, "the court of its own motion must declare that the issuable device in the interference proceeding was not patentable for want of invention, and could therefore dismiss the bill, although the question had not been raised either in the patent office or by the parties in the court below or in the supreme court."

Without referring to Hill v. Wooster, a later opinion in this circuit pursued the basic reasoning of that case for determining patentability in an interference action in a United States Court. See Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 90 F. 732, 734, 735, where it was declared that the power of the court should not be "perverted to the determination of an unprofitable inquest as to who was the first discoverer of a nullity."

Again, in Willett Mfg. Co. v. Root Spring Scraper Co., 6 Cir., 55 F.2d 858, 859, it was held that since a valid patent could not issue for the generic claims in interference, the complainant in the District Court was rightly denied relief under Section 4915. The comment was made that the court would not perform "a wholly vain act." This court has never departed from adherence to the principle of Hill v. Wooster, or attempted to modify its doctrine. This was made clear in the concise language of Judge Moorman in Root Spring Scraper Co. v. Willett Mfg. Co., 6 Cir., 84 F.2d 42, 43.

Hill v. Wooster is not only binding authority, but its prescribed sound procedure has been applied with practicality. See Triplett v. Line Material Co., 7 Cir., 133 F.2d 533, 534; Allbright-Nell Co. v. Autosteam Process Co., 7 Cir., 70 F.2d 959, 961, 962; Hansen v. Slick, D.C., 216 F. 164, 167, affirmed, 3 Cir., 230 F. 627; Radtke Patents Corporation v. Coe, 74 App. D.C. 251, 122 F.2d 937, 940.

■ In our judgment, the correctness of the holding of the District Judge upon the record in the instant case, that patentability and not priority is the first issue for determination, is conclusively supported by

Hill v. Wooster, in which the Supreme Court reversed the decree of the Circuit Court, which had considered, as likewise had the Patent Office Examiners, only questions of fact as to priority of invention in a suit brought under Section 4915 of Revised Statutes. The Supreme Court said [132 U.S. 693, 10 S.Ct. 230, 33 L.Ed. 502]: "The litigation between the parties on this bill cannot be concluded by solely determining an issue as to which of them in fact first made a cabinet creamery. A determination of that issue alone, in favor of the applicant, carrying with it, as it does, authority to the commissioner to issue a patent to him for the claims in interference, would necessarily give the sanction of the court to the patentability of the invention involved."

The highest tribunal commented that the parties appeared willing to ignore the question of patentability and had litigated merely the question of priority of invention on the assumpton that the invention was patentable; but that neither the Circuit Court nor the Supreme Court could overlook the question of patentability. Proceeding then to discuss the claims of the patent, nothing in them was found to constitute a patentable invention; and the case was remanded to the Circuit Court with the direction that the bill be dismissed.

Appellant has cited cases, listed below, in which suits were brought under Revised Statutes, Section 4915, wherein priority of invention supplied the basis of decision by United States Circuit Courts of Appeal, without reference to Hill v. Wooster. These decisions in no degree weaken and, indeed, could not affect the validity of the procedure there established. See Abbott v. Shepherd, 77 U.S.App.D.C. 101, 135 F.2d 769; Boucher Inventions, Ltd. v. Sola Electric Co., 76 U.S.App.D.C. 160, 131 F.2d 225; Philadelphia Storage Battery Co. v. Zenith Radio Corporation, 7 Cir., 117 F.2d 642; Smith v. Carter Carburetor Corporation, 3 Cir., 130 F.2d 555; Smith v. Prutton, 6 Cir., 127 F.2d 79.

None of these opinions supports the contention that a United States Court is prohibited from considering patentability in a proceeding under Section 4915; but the courts merely chose, on the particular facts presented in each of the cases, to base decision on priority.

■ It is insisted by appellant that the District Court erred in permitting the appellee to amend its counter-claim, so as to invoke jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400. The motion to amend was grounded by appellee upon the allegation of an existing actual controversy between the parties, resting on the charge of infringement made by appellant against appellee and a named manufacturer, concerning the manufacture and sale of rubber automobile floor mats. Pursuant to Civil Procedure Rule 15, the District Court granted the motion.

The argument of appellant seems hypercritical. The allowed amendment introduced no new cause of action and, indeed, no new issue. The issue of patentability had been raised on the pleadings and evidence upon that issue had been introduced. The appellant had received notice that such evidence would be introduced by appellee in support of its charge that the article claims of the interference covered nonpatentable subject matter; therefore, no unfair surprise was involved in the allowance of the amendment. Where the patent claims were found invalid, it would have been a waste of time to receive evidence upon the issue of infringement. With an adequate record upon which to determine patentability, no logical reason appears why the court should not have adjudicated with finality in declaring the rights of the parties, inasmuch as the conclusion had been reached that all of the patent claims were invalid.

Civil Procedure Rule 15(b) provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, the issues shall be treated in all respects as if raised in the pleadings. The rule is broad in its provision for amendment of pleadings to conform to the evidence, and expressly vests discretion in the court to allow amendments when evidence is objected to at the trial as not within the issues made by the pleadings; and the court is directed to allow amendments "freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."

It would seem idle to discuss the cases cited by appellant as authority in support of its assignment of error to the action of the District Court in allowing amendment of appellee's counter-claim, as none of them presents a situation considered similar to that met here. In the instant case, we think

the District Court exercised sound discretion in allowing the amendment.

■ Moreover, even if the decree of the District Court were considered too broad in an action under Revised Statutes, Section 4915, which we distinctly do not consider it, the decree obviously was not too broad under the Federal Declaratory Judgment Act, 28 U.S.C.A., Section 400.

The last question to be answered is whether the District Court erred in adjudicating as unpatentable and invalid Counts 1 to 10, inclusive, of Interference No. 72,668, in the United States Patent Office, corresponding to the article claims of the Blair and Schott Patent No. 2,032,-832, the method claim of Blair and Schott in their patent application No. 39,723, filed September 9, 1935, and the method claim of Vrooman in his patent application No. 661,453, filed March 18, 1933; and in dismissing the complaint and the counterclaim. In the judgment of this court the decree of the District Court was not erroneous.

Count 1 of the consolidated interference, No. 72,668, is a typical article claim: "A pre-shaped integral floor mat fashioned in conformity with a humped automobile floor or the like, said mat comprising a flexible plastic material layer substantially coextensive with the floor, a selected area of said layer corresponding to the floor hump being deformed and set in a permanently imparted hump-fitting bulge-form of substantially the same shape and size as the floor hump."

The method claim, Count 10 of the consolidated interference, reads as follows: "The method of making molded and contoured products from thermoplastic material which comprises molding the product thereby imparting a permanent design to at least one side thereof and thereafter contouring the product by heating it and subjecting it to pressure so as to stretch and give a permanent contour to the product with a portion thereof shaped to a different contour than it received in the first molding operation without substantially affecting the design imparted to it in the first molding operation."

With respect to the method claim, as the District Court succinctly said, the process of heating and molding rubber was an old practice, the claimed invention having simply modified it to meet a new need. The witness Paine testified that, when Vrooman disclosed his improved method, a contoured floor mat presented nothing novel as an article of manufacture, there being known at the time innumerable molded rubber articles of manifold shapes, among the simplest of which was the so-called "plumber's friend" used for opening up clogged water works—a contoured rubber article on the end of a broom stick. This seemingly foreclosed latter-day witchery in humping rubber.

Adams testified that Willys-Overland Company had made a contoured rubber floor mat for automobiles prior to the date of the claims in controversy, a sample of which exhibited in evidence had been found by him and another person on a 1931 Model Willys-Overland automobile in a junk yard in Toledo.

Ample justification is found for the holding of the District Court that the nine article claims were anticipated by the three cited Patents, namely: Neefus, No. 112,-168; Koehler, No. 1,536,226; and Punke, No. 1,820,324. It may be well to comment that the Patent Office apparently had none of these Patents before it when the claims in the Blair and Schott Patent, No. 2,032,-832, were granted. Neefus covered improvements in stair and floor-plates; Koehler, an attachment for an automobile running board; and Punke, a running board construction. Each of these inventors made humped rubber mats in the form desired to fit a particular contour of the hump to be covered. Neefus provided a series of humps in the rubber stair cover to fit, in shape and size, the series of humps in the stair boards. Koehler's humps, made on the underside of his running board step plate, fitted the raised hump on the surface of the running board. Punke contoured his rubber running board cover to fit the elevations, or depressions, in the shape of the steel running board. He particularized that, as shown by his figure 3, the mat preferably conforms in shape to the particular contour of the running board and dust shield, and is vulcanized to those parts.

■ All these rubber mats in the prior art were integral and "humped to cover a hump." They clearly anticipated Blair and Schott No. 2,032,832.

The judgment of the District Court is affirmed.