ZALKIND v. SCHEINMAN et al. (GUIDE SYSTEM & SUPPLY CO., Inc., Third-Party Defendant).

United States District Court
S. D. New York.
March 8, 1948.

Samuel Ostrolenk, of New York City (Mock & Blum, of New York City, of counsel), for plaintiff.

Lackenbach & Hirschman, of New York City, for defendants.

S. G. Faber, of New York City, for third-party defendant.

RIFKIND, District Judge.

This is an action by Philip Zalkind, against Sol Scheinman, Jacob Mandel, Pronto File Corporation and Masell Manufacturing Corporation for infringement of plaintiff's patents 2,218,011, 2,233,906 and 2,245,026. The defendants, in a counter-

claim against plaintiff and a third-party complaint against Guide System & Supply Co., plaintiff's licensee, allege that Scheinman's patent 2,277,155 and Scheinman's and Mandel's patents 2,012,857 and 2,110,-556 have been infringed by plaintiff and third-party defendant. Both plaintiff and defendants seek an accounting of profits, treble damages and an injunction. All the patents in issue relate to improvements in the art of reinforced collapsible storage-files. The complaint, the counterclaim and the third-party complaint are all defended on the grounds of invalidity and non-infringement.

Before examining into the issues of validity and infringement, it is necessary to consider the litigious history of Zalkind patent 2,218,011. Plaintiff claims that defendants are estopped to deny the validity of claims 7 and 10 of that patent.

On September 3, 1932, Zalkind applied for a patent—application No. 631,682. Application No. 690,360, filed September 21, 1933, is a division of that application. On April 19, 1933, Scheinman and Mandel applied for a patent—application No. 666,895.

Because of similarities in these and other applications, a series of interferences was declared by the Commissioner of Patents, in accordance with Rule 93 of the Patent Office, 35 U.S.C.A.Appendix. Of these, only Interference No. 68,363 concerning the above applications need concern us here. As finally framed this interference dealt with two counts (brought in by Zalkind on his motion to amend), which finally, with unimportant revision, became claims 10 and 7 of Zalkind patent 2,218,011, to wit:

"Claim 10. (Count 1.) A casing member of the class described, comprising a quadrilateral box-like structure having a body formed of an integral blank of non-metallic material scored and folded along certain portions serving as corner edges between the top, bottom and side walls, said body having the forward end margins thereof faced with metal strips arranged to permit folding and unfolding of said box structure along said scorings, and means engaging the marginal metal strips for holding the walls of the casing member rigidly in right-angled relation."

"Claim 7. (Count 2.) A casing having an open front end and comprising a bottom wall; side walls; a top wall; said walls being made of sheet material having fold lines between the top, bottom and side walls along which lines the same is manually foldable to form said walls; adjacent walls being movable angularly relative to each other about said fold lines to permit the casing to be shipped in knock-down condition; reinforcing members at front edges of said walls; an angle wire, one leg of which is secured to one of said reinforcing members, the other leg of said wire protruding from said reinforcing means, said angle wire being rotatable on said secured leg into position to be engaged by the reinforcing member of the adjacent edge for maintaining said adjacent walls in rigid angular relation."

The Examiner of Interferences on October 21, 1936, awarded priority of invention to Zalkind, the senior party, on the two counts in issue, and on July 9, 1937, this decision was affirmed by the Board of Appeals of the Patent Office, over objections by the junior party that the counts were unpatentable to either party in light of the British patent to Eddels—No. 273,-345, issued in 1927.

At this point, Scheinman and Mandel, exercising the privilege granted by R.S. § 4915, 35 U.S.C.A. § 63, brought a suit against Zalkind in the District Court—in the nature of an application for a patent. The bill of complaint contained the usual allegations that Scheinman and Mandel, the plaintiffs, were the true, prior, etc., inventors, and in Paragraph X contained the following allegations:

"X. That in awarding priority to defendant, the Commissioner of Patents through the Board of Appeals, made, among others, the following errors:

"a. He refused to consider the question of the anticipation of the counts in issue by the British patent to Eddels 273,345 on the assumption that 'this patent was considered by the Primary Examiner and the counts were held allowable over same', whereas in fact there is nothing of record to indicate that this British patent was before the Primary Examiner when he al-

lowed the counts in issue, such patent not having been made of record by the Examiner.

"b. He failed to recognize that to permit the counts in issue to be awarded to the defendant would work an injustice to the plaintiffs and to the public in general by reason of the obvious anticipation of the counts by the Eddels patent, and that the same would be true if the counts were awarded to the plaintiffs because the latter, knowing such counts to be anticipated, would then be compelled to disclaim the same".

Zalkind's answer denied, inter alia, the allegations of Paragraph X. Scheinman and Mandel, plaintiffs in that action, defaulted and the action was dismissed "with prejudice" after an inquest before Judge Woolsey at which the record of Interference 68,363 was put in evidence.

The plaintiff contends that the issue of patentability is one that the District Court in a 4915 action must decide, that the dismissal with prejudice of defendants' suit was an adjudication that plaintiff's claims were valid and that relitigation of that issue should not here be allowed. The defendants contend that the dismissal of that action can in no wise be deemed an adjudication of the validity of the claims. I hold with the defendants for the reasons about to be stated.

In 1937, when the previous suit was commenced, the wording of the statute under which it was brought read:

"§ 63. *Bill in equity to obtain patent.* Whenever a patent on application is refused by the Commissioner of Patents the applicant, unless appeal has been taken to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal or decision; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim or for any part thereof, as the facts in the case may appear.

And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication and otherwise complying with the requirements of law. In all cases where there is no opposing party a copy of the bill shall be served on the commissioner; and all the expenses of the proceedings shall be paid by the applicant, whether the final decision is in his favor or not. In all suits brought hereunder where there are adverse parties the record in the Patent Office shall be admitted in whole or in part, on motion of either party, subject to such terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court may impose, without prejudice, however, to the right of the parties to take further testimony. The testimony and exhibits, or parts thereof, of the record in the Patent Office when admitted shall have the same force and effect as if originally taken and produced in the suit." R.S. § 4915, as amended by 45 Stat. 1476, Act March 2, 1929.

In the leading case of Hill v. Wooster, 1890, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502, an unsuccessful Patent Office interferant brought a 4915 suit in the Circuit Court, and was awarded priority by that court. On appeal to the Supreme Court, the decree was reversed and remanded with instructions to dismiss the bill, on the grounds that the claims in issue were void for lack of invention. The Court held it the duty of the Circuit Court (and of the Supreme Court, on appeal) to investigate the patentability of the claims of an applicant, stressing the responsibility imposed upon the courts:

"The provision of section 4915 is that the circuit court may adjudge that *the applicant* 'is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear;' and that, *if the adjudication is in favor of the right of the applicant,* it shall authorize the commissioner to issue the patent. It necessarily follows that no adjudication can be made in favor of the applicant, unless the alleged invention for which a patent is sought is a patentable invention. The liti-

gation between the parties on this bill cannot be concluded by solely determining an issue as to which of them in fact first made a cabinet creamery. A determination of that issue alone, *in favor of the applicant,* carrying with it, as it does, authority to the commissioner to issue a patent to him for the claims in interference, would necessarily give the sanction of the court to the patentability of the invention involved." (132 U.S. at page 698, 10 S.Ct. at page 230) (Emphasis added)

Nothing in Hill v. Wooster suggests that a *dismissal* of a bill would carry with it any sanction of the court to issue a patent to the successful defendant and, indeed, only where the decree is in favor of the applicant does the statute itself bind the Commissioner. For this reason, there have been many cases [1] in which complaints in 4915 suits have been dismissed on the sole ground that plaintiff was not the prior inventor. The courts do not feel themselves bound to investigate the validity of the claims in issue unless the plaintiff is found to be prior.

Cleveland Trust Co. v. Berry, 6 Cir., 1938, 99 F.2d 517, 521, is particularly clear on this point. In that case the complaint of an unsuccessful interferant was dismissed in the District Court, appeal was taken, and the judgment affirmed. The Court said:

"Appellant's principal attack is directed at the validity of the Berry patent. But neither that question nor the alleged inperative character of the Berry device is involved in this proceeding. * * * The question is whether Jardine is entitled, according to law, to receive a patent for his invention as specified in his claim, or for any part thereof. Title 35, § 63, U.S.C., 35 U.S.C.A. § 63; * * *. If Berry's patent is invalid, that fact does not entitle Jardine or his assignee to a patent. Patentability of Jardine would necessarily be an issue in this case under circumstances such as those disclosed in Hill v. Wooster, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502. If this court should hold that the ruling of the patent tribunals on priority was incorrect and that Jardine was the first to conceive and to have acted with due diligence in reducing to practice the invention set forth in the counts in issue, then the question of patentability would be presented. Jardine still would not be entitled to a patent if these claims disclose no patentable novelty. * * * But * * * [no] case relied on declares that patentability must be determined in an action under this section where the claimed priority is not established. Hill v. Wooster, supra, and Root Spring Scraper Co. v. Willett Mfg. Co., supra [6 Cir., 84 F.2d 42], specifically hold that when the one seeking the decree under § 63 prevails in the trial court upon the question of priority, the patentability of his claims must be decided. But here Jardine has not prevailed as to priority".

This does not necessarily mean that the court *may* not dispose of the entire controversy on the sole basis of lack of patentability. Indeed, that is the course followed by many courts. Thus the Circuit Court in Mishawaka Rubber & Woolen Mfg. Co. v. Paine & Williams Co., 6 Cir., 1943, 139 F.2d 603, affirmed such a decision of the District Court, finding nothing in Cleveland Trust Co. v. Berry, supra, to interdict such a course of action. The appellants in the Mishawaka case cited a number of cases in which it was contended that priority alone supplied the basis of decision in a 4915 suit; but in all those cases, listed in the opinion, 139 F.2d 603, at page 606, and in footnote 1 of this opinion, the final decisions were adverse to the plaintiffs therein.

That either course may be followed is deducible from the fact that the same court has decided different actions in different ways. Thus the United States Court of Appeals for the District of Columbia in Boucher Inventions v. Sola Electric Co., 1942, 76 U.S.App.D.C. 160, 131 F.2d 225,

---

[1] E.g., Abbott v. Shepherd, 1943, 77 U.S.App.D.C. 101, 135 F.2d 769; Boucher Inventions v. Sola Electric Co., 1942, 76 U.S.App.D.C. 160, 131 F.2d 225, certiorari denied 1943, 318 U.S. 770, 63 S.Ct. 762, 87 L.Ed. 1140; Smith v. Carter Carburetor Corp., 3 Cir., 1942, 130 F.2d 555; Smith v. Prutton, 6 Cir., 1942, 127 F.2d 79; Philadelphia Storage Battery Co. v. Zenith Radio Corp., 7 Cir., 1941, 117 F.2d 642.

certiorari denied 1943, 318 U.S. 770, 63 S. Ct. 762, 87 L.Ed. 1140, and in Abbott v. Shepherd, 1943, 77 U.S.App.D.C. 101, 135 F.2d 769, in affirming dismissals of complaints, stated explicitly the the only question was one of priority. Yet in Radtke Patents Corporation v. Coe, 1941, 74 App. D.C. 251, 122 F.2d 937, certiorari denied, 314 U.S. 695, 62 S.Ct. 411, 86 L.Ed. 556, the same court, in reversing a decree in favor of the applicant, said:

"This being true, it is not necessary to decide the question of priority so ably presented on this appeal. We may assume, hypothetically, that either the Patent Office or the District Court correctly decided the question of priority, as between such disclosures as may have been made by each of the parties. But as none of those discoveries constituted invention, the question of priority is immaterial." 122 F.2d at page 955.

No case I have been able to discover has ever held that a dismissal of a 4915 action could be termed an adjudication that the claims in issue are valid, except a case strongly relied upon by plaintiff, McNamara v. Powell Muffler Co., D.C.N.D.N.Y. 1941, 38 F.Supp. 180. In that case, an infringement suit, plaintiff's motion to strike a defense of invalidity was granted on the basis of a prior unsuccessful 4915 action instituted by defendant in which, in addition to priority, he alleged the invalidity of the claims in issue in the infringement suit. Powell v. McNamara, D.C.N.D.N.Y. 1933, 5 F.Supp. 628, affirmed 2 Cir., 1935, 74 F.2d 750. Perusal of the reported opinions in the 4915 action reveals no indication that the issue of validity was passed upon, although the district court in the infringement action quotes from one of its own findings in the 4915 action—

"That the testimony shows McNamara was the true, original inventor of the improvement in muffler at issue herein within the meaning of the statutes; that the same was not known or used before his invention or discovery thereof." 38 F.Supp. at page 181.

■ Aside from the fact that allegations of unpatentability of the claims in issue in the complaint of a 4915 action—an action whose purpose is to secure issuance of a patent on these very claims—seem inappropriate, and have been held subject to demurrer in Richards v. Meissner, C.C. W.D.Mo. 1908, 163 F. 957, I think that the holding in the McNamara case was erroneous for reasons previously stated. Although it may be that an unsuccessful defendant in a 4915 suit could later be estopped from denying the validity of the claims there in issue, the language of 35 U. S.C.A. § 63 requires the holding that an unsuccessful plaintiff in a 4915 action is not estopped from later asserting the invalidity of the claims, regardless of the status of the pleadings or the issues actually litigated in the 4915 action.

■ The conclusion drawn from the language of the statute is reinforced by an independent line of reasoning derived from policy considerations. It seems to me that the same policy which dictates the limitations on the findings in a suit for infringement should likewise restrict the scope of the findings in an action under R.S. § 4915. In Cover v. Schwartz, 2 Cir., 1942 rehearing denied 1943, 133 F.2d 541, certiorari denied 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703, rehearing denied, 319 U.S. 785, 63 S.Ct. 1325, 87 L.Ed. 1728, it was held improper to combine a finding of noninfringement with one of validity.[2] For

---

[2] See Electrical Fittings Corp. v. Thomas & Betts Co., 1939, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263. Approval of the Cover v. Schwartz doctrine can be found in the following cases: Altvater v. Freeman, 1943, 319 U.S. 359, 363, 63 S.Ct. 1115, 87 L.Ed. 1450; Addressograph-Multigraph Corp. v. Cooper, 2 Cir., 1946, 156 F.2d 483; Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 1945, 152 F.2d 79; McCurrach v. Cheney Bros., 2 Cir., 1945, 152 F.2d 365; Katz v. Horni Signal Mfg. Corp., 2 Cir., 1944, 145 F.2d 961, certiorari denied, 1945, 324 U.S. 882, 65 S.Ct. 1029, 89 L.Ed. 1432; A. L. Smith Iron Co. v. Dickson, 2 Cir., 1944, 141 F.2d 3, 7; Larson v. General Motors Corp., 2 Cir., 1943, 134 F.2d 450, certiorari denied 319 U.S. 762, 63 S.Ct. 1318, 87 L.Ed. 1713; Krasnow v. Sachs & Perry, Inc., D.C.S.D.N.Y.1945, 58 F.Supp. 828. But see Crampton Mfg. Co. v. Crampton, 6 Cir., 1946, 153 F.2d 543, certiorari denied 328 U.S. 840, 66 S.Ct. 1017, 90 L. Ed. 1615.

the same reasons I think it improper for a court, in a 4915 suit, to combine a finding that the plaintiff is not the prior inventor with a finding of validity for his claims. In each context a gratuitous holding of validity is against the public interest.[3]

| Infringement Suits | R.S. § 4915—actions |
|---|---|
| 1. Validity—not dispositive of the case. | Patentability — not dispositive of the case. |
| 2. Invalidity—a permissible finding, resulting in a dismissal of the complaint. | Unpatentability — A permissible finding resulting in a dismissal of the complaint. |
| 3. Infringement—This finding alone presupposes a finding of validity of plaintiff is to recover. | Priority—This finding alone presupposes a finding of patentability (Hill v. Wooster, supra) if plaintiff is to succeed. |
| 4. Noninfringement—A permissible finding, resulting in a dismissal of the complaint. | Non priority—A permissible finding, resulting in a dismissal of the complaint. |
| 5. Validity and infringement — The usual finding resulting in judgment for plaintiff. | Patentability and priority—The usual finding resulting in judgment for plaintiff. |
| 6. Validity and noninfringement—Outlawed by Cover v. Schwartz. | Patentability and nonpriority — For reasons advanced in Cover v. Schwartz, should be outlawed. |
| 7. Invalidity and infringement — Finding of invalidity serves to dismiss complaint. Finding of infringement is a gesture, useful only should the Circuit Court overrule the finding of invalidity. | Unpatentability and priority—Finding of unpatentability serves to dismiss the complaint. Finding of priority is a gesture, useful only should the Circuit Court overrule the finding of unpatentability. |
| 8. Invalidity and noninfringement — Even though a finding of noninfringement disposes of the action a finding also of invalidity is in the public interest, to rid the market of scarecrow patents. | Unpatentability and nonpriority — Even though a finding of non-priority disposes of the action a finding of unpatentability is in the public interest, to rid the market of scarecrow patents. |

The statute and the doctrine of Cover v. Schwartz unite to render a finding of patentability improper in a dismissal of a 4915 action. The court may never find *for* the defendant, but only *for* or against the plaintiff. Consequently a judgment of dismissal can be founded only on lack of plaintiff's priority or want of patentability of the claims for which plaintiff seeks a patent, or both. It can never be founded on the validity of defendant's patent or claims.

In dismissing Scheinman's and Mandel's 4915 complaint the court must have found non-priority or unpatentability or both. Since it is not the contention of the plaintiff herein that his patent is invalid, the decision, in the light most favorable to the plaintiff herein, must have been limited to a finding of non-priority on the part of the defendants herein. Ergo, the estoppel argument is utterly without merit.

We may now proceed to the merits of the case.

Plaintiff alleges infringement of the following claims of his patents: No. 2,118,011, May 17, 1938, Container, Claims 1, 5, 6, 7, 10, 11, 15 and 16; No. 2,233,906, March 4, 1941, Container and Part Therefor, Claims 8, 9, 10; No. 2,245,026, June 10, 1941, Interlocking for Containers, Claims 1, 2, 3, 4, 5, 9, 10, 11. All these patents were issued to Zalkind, and in this opinion will be referred to as Patents 1, 2 and 3, in their chronological order.

In the counterclaim and third-party complaint defendants allege infringement of the following claims: No. 2,012,857, August 27, 1935, Reenforced Drawer Construction, Claims 12, 13, 15, 16, 18; No. 2,110,556, March 8, 1938, Reinforced Collapsible File Casing, Claims 2, 3, 5, 6, 7, 8, 9, 10; No. 2,277,155, March 24, 1942, Stacking Device For Storage Files, Claims 11, 14, 17. The first two of these patents were issued to Scheinman and Mandel, the third to Scheinman, and will be referred to as patents 4, 5, and 6, in their chronological order.

All the patents in issue have to do with the art of collapsible corrugated board individual file cases, reinforced with metal. Patent 1 deals with the reinforcing of the

[3] There is a close and convincing analogy between the possible findings in infringement suits and in actions brought under R.S. § 4915 (vis-a-vis the plaintiff), here demonstrated graphically:

front edge of the corrugated carton with metal; patent 2 deals with a roller construction to avoid friction between the drawer and the casing; patent 3 deals with a device which facilitates stacking of the individual file boxes; patent 4 deals with the facing of the front of the file drawer with metal; patent 5, like patent 1, deals with reinforcing the front open edges of the file casing; patent 6, like patent 3, deals with a stacking device.

The art to which all six patents are related is that of receptacles for papers and files, and particularly receptacles known in the trade as transfer files, files of cardboard or fibre-board designed to receive papers for storage rather than for current use. Prior to the conception of the earliest of the patents in issue, the steel filing cabinet, consisting of a steel drawer slidable on rollers inside a steel outer casing was well known. The paper, cardboard or fibreboard filing receptacle was desirable merely by reason of lower cost.

## Patent No. 1.

Plaintiff's Patent 1, in its most elaborated exemplification, is concerned with the outer casing for such a paper transfer file. The problem to which the inventor addressed himself was to devise a construction which could be shipped or stored in knockdown, relatively flat condition and yet when loaded and subjected to the weight of a stack of similarly loaded filing cases could maintain rigidity. He solved his problem thus: He fastened to each of the two horizontal edges at the open front end of the casing a metal channel. Two stiff angle wires were provided for each channel so that one leg of each angle wire rotated in the channel and the other, at right angles, could be brought into position, along a vertical edge of the casing. Metal channel posts then engaged the vertical legs of the upper and lower angle wires to the vertical edges of the casing. In order to knock the casing down one had but to disengage the vertical channel posts, which were retained in place only by friction, rotate the angle wires from a vertical to a horizontal position and collapse the casing.

Claim 10, quoted supra, 81 F.Supp. 300, is much broader than this description. It

is not limited to the angle wire, channel post construction, but claims everything which is embraced in the words "means engaging the marginal metal strips for holding the walls of the casing member rigidly in right angled relation."

It is not contended that plaintiff claims invention of a "quadrilateral box-like structure having a body formed of an integral blank of non-metallic material. * * *." Nor is it contended, as indeed it could not be, that reinforcing the edges of such a box with metal strips was novel. Invention, if any, must reside in the "means" engaging the marginal metal strips for holding the walls of the casing rigid in right angled relation. The claim discloses no such means. It states a problem; it does not solve it. The prior art is crowded with solutions. But plaintiff is not entitled to a monopoly on those.

Morey, No. 229,904, issued in 1880, shows a veneer basket, its open edge reinforced with a sheet metal rim and its corners stiffened with solder.

Arnold, No. 787,712, issued in 1905, shows a drawer type shelf goods box made of strawboard, buckram or other material. He discloses a casing, the front open edge of which is reinforced with a metal throatpiece which is rendered rigid by the fold in the metal in which it receives the open edge of the casing.

Flora, No. 881,785, issued in 1908, discloses a fibre-board box, its edges bound in metal binding strips.

Reber, No. 1,046,018, issued in 1912, teaches how to strengthen the corners of a paper board shipping box with metal clamps.

Huffman, No. 1,893,801, issued in 1933, related to the very art under consideration—transfer files. To reinforce the corners he used angle irons.

The British patent to Eddels, No. 273,345, issued in 1927, shows a fibre-board box, reinforced with metal strips and the corners made rigid with angle wires.

Collapsible paper-board or fibre-board casings are old; reinforcing the edges of such casings with metal strips is old; stiffening the corners with angle wires is old. What is there in the disclosures of the pat-

306

ent which can lay claim to inventive novelty? I find nothing. Neither the broad claim 10 nor the narrower claim 7 teaches anything which is new.

[3] The narrowest of the claims, No. 16[4] contributes a novel feature. It combines each pair of angle wires into a single wire having two right angle arms. This advance I judge to be trivial. It does not rise to the level of invention.

In one of the accused devices reinforcement is supplied by a rigid metal frame of channel cross-section, internally made rigid by angle wire. When secured to the front edge of the casing it forms a throat piece. When the casing is in knock-down condition this throat piece is completely detached. The other of the accused devices has a substantially similar frame which is, however, rotatably secured to a metal reinforcement attached to the upper horizontal edge of the casing.

While words may be so associated that these devices read on the claims, especially those which disclose very little, if anything, the fact remains that neither the specifications nor the claims teach the construction of the accused devices except as the art prior to the patent teaches both the disclosures of the patent and the accused devices.

■ I find the litigated claims of patent No. 1 void for anticipation and want of invention.

I find that the accused devices do not infringe on the claims in issue.

Patent No. 2.

Claims 8, 9 and 10 of patent 2 deal with a track and roller mechanism of the drawer and casing. Each vertical reinforcement of the casing consists of a flat perforated strip of sheet metal permanently attached to the outside of the casing along its vertical front edge, and protruding beyond the

edge. When the box is set up, the metal is bent around the edge of the box, engaging the angle wires rotating in the top and bottom horizontal reinforcements. A simple metal wheel is pivoted in each of the two vertical reinforcements, so arranged that when they are folded about the edge, the wheel is on the inside of the opening of the casing, ready to receive and serve as roller for the tracks which are attached to the sides of the drawer. Claim 8 is typical of the other two:

"8. A collapsible cabinet comprising the combination of a drawer section of a substantially fibrous board structure foldable into a substantially flat arrangement; a casing section of a substantially fibrous board structure for enclosing said drawer section, and foldable into a substantially flat arrangement; roller mechanism associated with one of said sections for slidably supporting said drawer within said casing when said sections are in assembled condition; reinforcing means secured to said one section for carrying said roller mechanism, whereby said one section is foldable into said substantially flat arrangement with said roller mechanism and reinforcing means attached thereto, with negligible additional thickness being required for said flat arrangement; and track mechanism for coacting with said roller mechanism mounted on the other of said section, and adapted to strengthen said section whereby said other section is foldable into said substantially flat arrangement with said track mechanism mounted thereon."

The track and the wheel are old in many many arts, and certainly old in the art of the file box. Many applicable references were received in evidence; they need not here be cited. A collapsible file box presents no unique problem to the coaction of track and roller which should call for inventive skill in its solution. If invention resides in the flat arrangement of the

4 "16. In a collapsible casing having an open front end and comprising wall members united along fold lines extending from said open end; an angle wire, secured at the front edge of one of said walls; the portion of said angle wire so secured being continuous along the edge of said wall; said angle wire having a projecting leg at each end of the secured portion thereof; said angle wire being rotatable on said secured portion into position so that the projecting legs may be engaged at the front edges of adjacent walls; means for holding said angle wire in place at said latter front edges for maintaining said adjacent walls in rigid angular relation."

knock-down assembly, the claims in issue do not disclose and are not limited to any means of attaining it. The same is true of the pliable vertical support of the roller.

Nor does the accused device infringe. If there be any distinguishing feature in the embodiment of plaintiff's patent as produced at the trial it is that the wheel appears outside the casing itself when the casing is collapsed, and that this adds no thickness to the casing in its knocked down condition. The accused device exhibits no such feature. The roller is on the interior face of the casing and, of course, increases the thickness of the casing when collapsed.

■ I find this patent neither valid nor infringed.

### Patent No. 3.

Patent No. 3 is concerned with the problem of restraining movement between transfer files when arranged in vertical stacks. To solve this problem the inventor, in his patent, provides the exterior side of his vertical metal edge reinforcement, near the top thereof, with a socket or pocket into which he inserts a metal bar, the upper end of which extends beyond the top of the casing and enters a similar pocket in the lower end of the vertical reinforcement of the casing next above. That restrains movement between the upper and lower casing in the stack. To check movement relative to the transfer files in an adjacent stack, he punches a tongue out of the raised mid portion of his metal bar which engages a similar tongue, pointed in the opposite direction, punched out of the metal bar of the adjacent stack of files.

A typical claim reads:

"11. In combination, a file having a casing provided with a socket element adjacent to the top wall thereof, and a stacking member having a lower portion adapted to be inserted within said socket element and an upper portion adapted to extend above the upper edge of the casing and be received in a similar socket element adjacent to the bottom wall of a casing stacked above the first casing, said member including an intermediate portion adapted to engage the socket element at the top of the first casing to limit the downward movement of the stacking member within said stacking element, and to be engaged by the socket element at the bottom of the superposed casing so as to assist in transmitting the pressure from the upper to the lower casing through the socket elements, said intermediate portion including a plurality of spaced members adapted to interengage with a stacking member reversed with respect thereto on an adjacent column of files to hold the column against longitudinal displacement."

The prior art is replete with stackers of this kind. See, for example, Zimmerman 1,937,935, issued in 1933, and Sandmann, 1,340,562, issued in 1920. Again, even if it could be said that there was some invention in adapting a tongue and groove stacker to a bank of collapsible file cabinets, the defendants' accused device would not infringe. The accused device is much more akin to a door hinge. Defendants' stacker is inserted into the grooves of the casing reinforcements in much the same way, but the interlocking effect between stacks is produced by a plurality of humps in one stacker which mesh with similar humps in the adjacent stacker so as to form a cylindrical opening into which a nail or brad is inserted, in the same manner as a peg in a door hinge.

■ I find the patent invalid and not infringed.

The counterclaim patents have no more to commend them.

### Patent No. 4.

■ Patent 4 shows a paper board, collapsible drawer of a file cabinet of which the front wall of the drawer is sheathed in metal. It is inconceivable that invention is displayed by one who covers the front of a cardboard drawer with a sheet of metal. Patent No. 4 is void for lack of invention.

### Patent No. 5.

Patent No. 5 discloses a collapsible transfer file differing from the kind already described in that the vertical as well as the horizontal metal reinforcements are permanently secured to the front edges of the casing. Each vertical metal reinforcement is provided with a recess running its en-

308

tire length to receive the angle wire when it is turned down into vertical position.

It may possess a modicum of novelty but none of invention in the light of the prior art discussed under patent No. 1. There is not even commercial success to serve as a make-weight. Indeed, the manufacture of this article was long ago abandoned.

■ I find the claims in issue invalid and not infringed by any of plaintiff's devices, already described.

### Patent No. 6.

■ Patent No. 6 covers the accused device described under patent No. 3. It is invalid for want of invention. It is not infringed by plaintiff's stacking device.

The complaint, the counterclaim and the third-party complaint are all dismissed.